Alonzo Pritchett                  :

                                  :

        v.                      :

                                    :

Commonwealth of Pennsylvania,     :

Department of Transportation,      :

Bureau of Driver Licensing,        :   No. 1330 C.D. 2020

                Appellant     :   Submitted: September 3, 2021

BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION BY
JUDGE COVEY                            FILED: December 13, 2021

        The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT) appeals from the Chester County Common Pleas Court's (trial court) December 3, 2020 order sustaining Alonzo Pritchett's (Licensee) appeal from DOT's 12-month suspension of his driving privileges. DOT presents one issue for this Court's review: whether the trial court erred by determining that Licensee satisfied his burden of proving he was incapable of making a knowing and conscious decision to refuse chemical testing of his blood. After review, this Court reverses.

        On April 20, 2019, at approximately 10:15 p.m., Pennsylvania State Trooper Timothy Carroll (Trooper Carroll) observed a black Dodge automobile traveling southbound on Route 52 in the area of Cossart Road, in Pennsbury Township, Chester County, with an inoperable center brake light. Based on this observation, Trooper Carroll initiated a traffic stop. He approached the vehicle and noticed the odor of marijuana emanating from the vehicle. Trooper Carroll asked

Licensee how much marijuana was in the vehicle. Licensee responded that there was none, but admitted he had smoked marijuana two hours earlier at his job. Trooper Carroll asked Licensee to exit the vehicle so he could perform a probable cause search of the vehicle. Although Trooper Carroll found no marijuana in the vehicle, based on Licensee's admission that he smoked marijuana two hours prior, Trooper Carroll asked Licensee to submit to a Standard Field Sobriety Test.

Trooper Carroll first performed a Horizontal Gaze Nystagmus Test, during which he did not observe indicators that Licensee was under the influence of marijuana. Based on Licensee's representation to Trooper Carroll that he had a leg injury, Trooper Carroll opted to not have Licensee perform the walk-and-turn and one-leg-stand. Rather, he executed Advanced Roadside Impaired Driving Enforcement (ARIDE) tests, the first of which was the Lack of Convergence Test, wherein Trooper Carroll moved a stimulus in a circle around Licensee's face and toward his nose to see if Licensee's eyes converged on it. At that time, Licensee's eyes did not converge. Based on his training, Trooper Carroll concluded that was an indicator that Licensee was under the influence of marijuana.

Trooper Carroll next performed the Rhomberg Balance Test, during which Trooper Carroll asked Licensee to stand, feet together, arms down by his side, tilt his head back, and imagine the passing of 30 seconds in his head. Trooper Carroll told Licensee to lift his head and say stop when he thought 30 seconds had passed. Licensee's estimate of 30 seconds was approximately 10 real seconds. Given his training and experience that, after somebody recently smoked marijuana, his/her heart rate and blood pressure increase and his/her internal clock speeds up, Trooper Carroll determined that was an indicator that Licensee was under the influence of marijuana. Considering the totality of the circumstances, i.e., Licensee's admission that he smoked marijuana, his bloodshot eyes, and the results of Licensee's Standard Field Sobriety Test and the ARIDE testing, Trooper Carroll determined that

Licensee was under the influence of marijuana to a degree that he could not safely operate a motor vehicle, and he placed Licensee under arrest.

Trooper Carroll placed Licensee in the front passenger seat of his patrol vehicle. He told Licensee that he would be asking Licensee to submit to a blood draw, a chemical test of blood, and read Licensee the DL-26 Form.[1] Trooper Carroll read paragraphs one through four of the DL-26 Form verbatim. Licensee appeared to have a difficult time deciding whether he wanted to submit to the blood test. Although Licensee originally agreed to the blood test, during his transport to Jennersville Hospital, he declared that he did not want to submit to a blood test and told Trooper Carroll to take him to the police station. Trooper Carroll took Licensee to the police station[2] where he was fingerprinted, processed, and released.

On June 11, 2019, DOT mailed Licensee an Official Notice of Suspension of Driving Privilege (Notice) for one year, effective July 23, 2019. Licensee appealed from the Notice to the trial court. On December 3, 2020, the trial court held a hearing and sustained Licensee's appeal. DOT appealed to this Court.[3] On January 6, 2021, the trial court ordered DOT to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). DOT timely filed its Rule 1925(b)

---

[1] "The DL-26 Form contains the chemical test warnings required by Section 1547 of the Vehicle Code, [75 Pa.C.S. § 1547,] which are also known as the implied consent warnings." *Vora v. Dep't of Transp., Bureau of Driver Licensing*, 79 A.3d 743, 745 n.2 (Pa. Cmwlth. 2013).

[2] The record does not state which police station; however, Trooper Carroll is stationed out of Avondale, Pennsylvania. *See* Reproduced Record at 47. Because the pages of the Reproduced Record are not numbered, the page numbers referenced in this opinion reflect electronic pagination.

[3] "Our review is to determine whether the factual findings of the trial court are supported by [substantial] evidence and whether the trial court committed an error of law or abused its discretion." *Renfroe v. Dep't of Transp., Bureau of Driver Licensing*, 179 A.3d 644, 648 n.3 (Pa. Cmwlth. 2018).

3

Statement. On March 10, 2021, the trial court issued its opinion pursuant to Rule 1925(a).[4]

> Initially,
>
> [t]o support the suspension of a licensee's operating privilege under [Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547 (commonly known as the] Implied Consent Law[)], DOT must prove that the licensee: (1) was arrested for [driving under the influence (]DUI[)] by an officer who had reasonable grounds to believe that the licensee was operating a vehicle while under the influence of [marijuana] in violation of Section 3802 of the Vehicle Code; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that his refusal might result in a license suspension . . . . Once DOT satisfies its burden of proof, the burden shifts to the licensee to prove that either: (1) his refusal was not knowing and conscious; or (2) he was physically incapable of completing the chemical test.

*Conrad v. Dep't of Transp., Bureau of Driver Licensing*, 226 A.3d 1045, 1051 (Pa. Cmwlth. 2020) (citation omitted).

> Further, a motorist's self-serving testimony that []he was incapable of providing a knowing and conscious refusal of a chemical test is insufficient to meet [his] burden of proving incapacity. [*See*] *Kollar v. Dep't of Transp., Bureau of Driver Licensing*, 7 A.3d 336 (Pa. Cmwlth. 2010). Rather, a licensee's incapacity defense must be supported by competent medical evidence where []he suffers from no obvious disability.

*Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 281 (Pa. Cmwlth. 2018).

---

[4] Because the first trial court judge retired, another trial court judge wrote the opinion, wherein he essentially stated that he did not understand the trial court's reasoning, and left it up to the Commonwealth Court to determine whether "holding a valid permit to possess and use medical marijuana is a defense to the charge [sic] of refusing to submit to chemical testing[.]" Trial Ct. Op. at 3.

4

Here the trial court sustained Licensee's appeal because he had a medical marijuana card. Specifically, the trial court stated: "I'm going to find him not guilty because I think he legal -- he has utilized legally [sic] marijuana." Reproduced Record (R.R.) at 41.

DOT argues that the trial court erred as a matter of law in holding that Licensee's possession of a Delaware medical marijuana card satisfied his burden of proving he could not have made a knowing and conscious decision to refuse chemical testing because he believed he was allowed to smoke marijuana in Delaware and then drive in Pennsylvania.[5] This Court agrees.

Licensee testified:

> I was going to go with [Trooper Carroll] to take blood. He drove for like 45 minutes, your Honor, in the dark just going straight, and I got scared. I told him, never[ ]mind, take me back. I went and showed evidence. I went to trial already. I have a video of what he's saying, everything that took place in his car. And the judge found me not guilty of the DUI charge.

R.R. at 37.

Licensee confused the evidence required for a criminal prosecution with the evidence needed to uphold DOT's suspension of his operating privilege based on a refusal to submit to chemical testing.

The Pennsylvania Supreme Court has long held:

> Where the driver refuses to take a [chemical] test, that refusal violates a condition for the continued privilege of operating a motor vehicle and is properly considered as a basis for suspension of that privilege. The driver's guilt or innocence of a criminal offense is not at issue in the license suspension proceedings. The only fact necessary to the administrative determination is the driver's refusal to

---

[5] By September 3, 2021 Order, this Court precluded Licensee from filing a brief due to his failure to comply with this Court's June 15, 2021 Order directing him to file a brief within 14 days of the exit date of said Order.

comply with the [chemical test] request after being taken into custody.

*Dep't of Transp. v. Wysocki*, 535 A.2d 77, 79 (Pa. 1987).

Here, Licensee apparently believed that he need not agree to a blood test because he is permitted to use medical marijuana. While the fact that a positive blood test may be explained during the criminal trial by admission of Licensee's medical marijuana card, that fact does not negate "the power of [DOT] to suspend a driver's license, which is conferred by the [I]mplied [C]onsent [L]aw." *Id*. Specifically, because Licensee's car smelled like marijuana, Licensee told Trooper Carroll that he had recently smoked marijuana, License had bloodshot eyes, and Licensee failed the administered intoxication tests, Trooper Carroll had reasonable grounds to believe that Licensee was driving under the influence of marijuana. Consequently, Section 1547 of the Vehicle Code requires that Licensee's license be suspended based upon his refusal of chemical testing, regardless of his medical marijuana card.

For all of the above reasons, the trial court's order is reversed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alonzo Pritchett                  :
                                   :
          v.                 :
                                   :
Commonwealth of Pennsylvania,    :
Department of Transportation,      :
Bureau of Driver Licensing,         :    No. 1330 C.D. 2020
                   Appellant     :

## O R D E R

AND NOW, this 13th day of December, 2021, the Chester County Common Pleas Court's December 3, 2020 order is reversed.

_____
ANNE E. COVEY, Judge